UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Karl Pennington,<br><br>                 Plaintiff,<br><br>   -against-<br><br>ANTHONY ANNUCCI, Acting Commissioner of the New York State Department of Corrections and Community Supervision, in his official capacity,<br><br>                Defendant. | **COMPLAINT** |

Plaintiff Karl Pennington by his attorneys, Emery Celli Brinckerhoff Abady Ward & Maazel LLP, alleges as follows:

**PRELIMINARY STATEMENT**

1. After twenty years in prison, Plaintiff Karl Pennington has served, and will continue to serve on parole, his punishment for the crime he committed: kidnapping for ransom.

2. Mr. Pennington, however, is now being punished for a crime he has not committed: a high-risk sex offense.

3. Although the District Attorney prosecuting his case has conceded that Mr. Pennington did not commit sexual misconduct and never has, New York still requires that Mr. Pennington register as a sex offender.

4. This baseless designation has prolonged Mr. Pennington's incarceration. He has been eligible for release for over a month, but still has not been released because his sex offender designation has made it difficult for him to transfer his parole supervision to Philadelphia, where his entire family resides. To the extent he must remain in New York, Mr. Pennington has been

unable to find housing that complies with New York's Sexual Assault Reform Act—housing that multiple courts have found is virtually non-existent in New York City.

5. Once Mr. Pennington is released, he would become subject to a raft of life restrictions that, while perhaps appropriate in some circumstances for high-risk sex offenders, have nothing to do with Mr. Pennington and would harshly inhibit his ability to find housing, find work, reconnect with family and friends, and move on with his life as a law-abiding citizen.

6. A District Judge and Magistrate Judge in this Court have already ruled that Mr. Pennington's co-defendant could not lawfully be registered as a sex offender because a state court judge found, and the State conceded, that the crime at issue had nothing to do with sex. *See Yunus v. Robinson*, No. 17-CV-5839 (AJN), 2019 WL 168544, at *9-*11 (S.D.N.Y. Jan. 11, 2019); *Yunus v. Robinson*, No. 17-CV-5839 (BCM), 2018 WL 3455408, at *25-*29 (S.D.N.Y. June 29, 2018).

7. Mr. Pennington and his co-defendant were found to have engaged in exactly the same conduct—kidnapping a child—against the same person—a 14-year-old associated with a rival drug gang—and were convicted of the same offense, kidnapping for ransom in violation of New York Penal Law Section 135. The People have again conceded that there was no sexual misconduct at issue and Mr. Pennington, like his co-defendant, has no history of sexual misconduct. Mr. Pennington likewise should not have to register as a sex offender for a crime that the State has already conceded had nothing to do with sex and multiple federal judges in this District have held could not by itself support the stigmatizing designation of a sex offender.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

9. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred within this District in the State of New York.

## PARTIES

10. Plaintiff Karl Pennington is an inmate at Fishkill Correctional Facility, 271 Matteawan Road, P.O. Box 124, Beacon, NY 12508-0307. Mr. Pennington was granted parole on June 28, 2021, at his first available opportunity. A true and correct copy of the Parole Board Release Decision Notice is attached as **Exhibit A**. Even though it is undisputed that Mr. Pennington has never committed sexual misconduct, New York law requires that he register as a sex offender. Mr. Pennington was supposed to be released on August 2, 2021, but continues to be confined at least in part due to his status as a sex offender.

11. Defendant Anthony Annucci is the Acting Commissioner of DOCCS. DOCCS is responsible for registering sex offenders and maintaining and publishing New York's sex offender registry. *See* N.Y. Correct. Law § 168-b. He is sued in his official capacity.

12. Acting Commissioner Annucci is an appropriate defendant in a case challenging the constitutionality and enforcement of New York's Sex Offender Registration Scheme. *See* N.Y. Correct. Law § 168-b.

## FACTUAL ALLEGATIONS

**Conviction and Sex Offender Designation**

13. In 2002, Plaintiff was convicted of two counts of kidnapping-for-ransom and was sentenced to twenty-years to life of incarceration.

14. The kidnapping arose in the context of the drug trade and had no sexual component.

15. Nonetheless, because one of Mr. Pennington's victims was under seventeen years old and was not his child, New York's Sex Offender Registration Act ("SORA") still requires him to register as a sex offender. N.Y. Correct. Law § 168-a.

16. During the twenty years he has been incarcerated, Mr. Pennington reformed his life.

17. Mr. Pennington has completed numerous rehabilitative programs and vocational programs, including food training service programs, HIV counseling programs, and multiple programs related to custodial services and industrial maintenance.

18. As a result of his positive performance in these programs, Mr. Pennington was awarded multiple jobs within his correctional facility, including cleaner (commercial/institutional industrial), wall cleaner, window cleaner, salad maker, vegetable cook, food preparation worker, and custodian. All of these jobs allowed Mr. Pennington to further develop skills that he enjoys and that will help him find employment upon his release.

19. Mr. Pennington has never been charged with, let alone convicted of sexual misconduct of any sort.

**Mr. Pennington's Co-Defendant is Granted a Preliminary Injunction by this Court Enjoining DOCCS from Forcing Him to Register as a Sex Offender**

20. Mr. Pennington's Co-Defendant, Equan Yunus, aka Damon Vincent, was released from prison on parole in 2016.

21. Shortly before his release, a hearing was conducted pursuant to the New York State Sex Offender Registration Act ("SORA") before the Honorable Michael J. Obus of the New York State Supreme Court. A transcript of this hearing is attached hereto as **Exhibit D.**

22. Because New York Law required that Mr. Yunus be designated as a sex offender even though his conduct had no relation to sex, the only options available to the judge were to

designate Mr. Yunus as a Level-One (low risk), Level-Two (moderate risk) or Level-Three (high risk) offender. As a matter of law, Justice Obus was required to classify Mr. Yunus as a sex offender.

23. At the hearing, Justice Obus observed that there is "not only . . . no allegation of sexual abuse in this case, but . . . also no suggestion of any history of sexual misconduct on the part of the Defendant at all . . . [n]or is there any indication of any propensity on the part of the defendant for sexual misconduct." *Id.* at 21-22.

24. In light of those observations, Justice Obus found that he was "satisfied that there is virtually no likelihood that [Mr. Yunus] will commit a sex crime ever." *Id* at 22.

25. All of these same observations would apply to Mr. Pennington. He and Mr. Yunus committed the identical crime for which there was "no allegation of sexual abuse in this case" and his background contains "no suggestion of any history of sexual misconduct" or "any propensity… for sexual misconduct."

26. Thus, there is "virtually no likelihood that [Mr. Pennington] will commit a sex crime ever."

27. Mr. Yunus challenged this designation as a sex offender in federal court in this District, arguing that because his crime of conviction (the exact same crime committed by Mr. Pennigton against the same person) did not involve sexual misconduct, it violated his substantive due process rights to force him to continue to register as a sex offender.

28. The State did not dispute Justice Obus's conclusion that the crime in question did not involve sexual misconduct and "conceded for the purposes of [the preliminary injunction motion] that there was no sexual component to Plaintiff's offenses." *Yunus v. Robinson*, No. 17-CV-5839 (AJN), 2019 WL 168544, at *10 (S.D.N.Y. Jan. 11, 2019).

29. Mr. Yunus was granted a preliminary injunction, first by Judge Moses in a Report & Recommendation and then by Judge Nathan adopting the R&R, enjoining the State from enforcing SORA's registration and notification provisions against him and ordering that all mandatory or discretionary conditions of parole applied to him by virtue of his registration as a sex offender be removed. *See Yunus v. Robinson*, No. 17-CV-5839 (AJN), 2019 WL 168544, at *9-*11 (S.D.N.Y. Jan. 11, 2019); *Yunus v. Robinson*, No. 17-CV-5839 (BCM), 2018 WL 3455408, at *25-*29 (S.D.N.Y. June 29, 2018).

30. When granting Mr. Yunus's motion for a preliminary injunction, both Judge Moses and Judge Nathan held that the State could offer no rational basis to register a person as a sex offender when it was undisputed that the crime forming the basis of that registration had no sexual component. *See Yunus*, 2019 WL 168544, at *11 ("What [the Court's ruling] does prohibit is applying a specifically sexual stigmatizing designation and restrictions designed to prevent sexual abuse to an individual who has not committed any and who poses virtually no risk of doing so. Such an action cannot be viewed as rationally related to SORA's purpose.").

31. Mr. Pennington committed the identical crime against the identical person as Mr. Yunus. They were arrested for the same conduct, charged with the same crimes, and criminally prosecuted in connection with the same kidnapping of a minor, for which there was no sexual component.

**Mr. Pennington's Designation as a Sex Offender**

32. Despite having committed the identical crime as Mr. Yunus, Mr. Pennington is now being subjected to the same unconstitutional treatment that Mr. Yunus successfully challenged.

33. Mr. Pennington was granted parole on June 28, 2021, and became eligible for release from prison on August 2, 2021.

34. Like Mr. Yunus, Mr. Pennington appeared at a SORA registration hearing where the only options before the judge were to designate Mr. Pennington as a Level One, Two, or Three offender—determining that Mr. Pennington was not an offender at all was not an option. In turn, Mr. Pennington was designated as a sex offender. N.Y. Correct. Law § 168-n(2).

35. Mr. Pennington has had no opportunity to challenge whether he should be designated as a sex offender at all.

36. As in Mr. Yunus's case, it is conceded that Mr. Pennington's crime had no sexual component. In addition to being the same crime that Justice Obus found had "no suggestion . . . of sexual misconduct," the District Attorney conceded that Mr. Pennington has never committed sexual misconduct both in its papers submitted to the Court in connection with Mr. Pennington's SORA hearing and at the hearing itself. The District Attorney's Memorandum of Law to the Court is attached as **Exhibit B**. A transcript of Mr. Pennington's SORA hearing is attached as **Exhibit C**.

37. In its memorandum of law, the District Attorney acknowledged that Mr. Pennington "did not engage in sexual contact with the victim in the course of kidnapping" and that Mr. Pennington "had no sexual contact with the victim." Ex. B at 3,6 (New York's Memorandum of Law at SORA hearing). The State likewise conceded that this incident (where he committed no sexual misconduct) was his first "first 'sex offense' as defined by SORA." *Id.* at 7.

38. At the hearing itself, the District Attorney acknowledged that Mr. Pennington was "convicted of acts that were not sexual as that term is commonly understood." Ex. C at 7[1]

**Mr. Pennington's Continued Confinement:**

39. Even though Mr. Pennington became eligible for his release on August 2, 2021, he is still confined in state prison.

40. Mr. Pennington's parents, sister, aunts, uncles, and large support network of friends, all live in Philadelphia.

41. Mr. Pennington has requested a transfer to parole supervision in Philadelphia, but that request remains pending.

42. Mr. Pennington's status as a sex offender is a possible impediment to his transfer.

43. As the Pennsylvania Board of Parole Interstate Services Division has explained to Plaintiff's counsel— "if the offender is a registered sex offender or has sex offender conditions imposed by the sending state, we will treat the offender in the same manner.  This means we will view the plan of supervision to ensure it meets the conditions set forth by the sending state and our own conditions that we would impose on a similarly situated offender.  If the plan violates any of the conditions by either state or our manner and degree of supervision, the plan can be denied." *See* **Exhibit E** (August 26, 2021 email from Matthew Reed of the Pennsylvania Board of Parole, Interstate Services Division to Plaintiff's counsel).

44. In sum, Plaintiff's sex offender status "does play into the acceptance or rejection of a plan of supervision." *Id.*

---

[1] While Mr. Pennington was adjudicated a Level-Two offender, his entire SORA hearing operated under the legal fiction that kidnapping a minor was a per se "sexual" offense because it was designated as such under SORA. *See* Ex. C at 7, 20. In making its ruling, the Court made clear that Mr. Pennington's conviction was being treated as a sex crime only because "the offense for which [Mr. Pennington] was convicted in this case is designated a sex crime for purposes of the Sex Offender Registration Act," *id.* at 20, not due to any sexual misconduct committed by Mr. Pennington.

45. To the extent he remains in New York, Mr. Pennington remains subject to the Sexual Assault Reform Act, N.Y. Exec. Law § 259-c ("SARA"), a separate, but related law that bars Mr. Pennington from living within 1,000 feet of a school (the "1,000 foot requirement").

46. Multiple New York courts have observed that this requirement is effectively banishment from New York City. *See Williams v. Dep't of Corr. & Cmty. Supervision*, 136 A.D.3d 147, 150 (1st Dep't. 2016) ("most of Manhattan" is within 1,000 feet of a school); *State v. Floyd Y.*, 56 Misc. 3d 271, 274, (N.Y. Sup. Ct. N.Y. Co. 2017) ("In dense urban areas like New York City, a vast proportion of the housing stock is located within 1,000 feet of a school."); *Devine v. Annucci*, 45 Misc. 3d 1001, 1006–07(Sup. Ct. Kings Co. 2014*), rev'd*, 150 A.D.3d 1104 (2d Dep't. 2017) (observing that "a very substantial portion of Brooklyn" is within 1,000 feet of a school, putting the restriction "on a par with banishment in the eyes of this court").

47. Although Mr. Pennington is technically subject to SARA because of his conviction for kidnapping a minor (rather than his designation as a sex offender), the crimes which require someone to register as a sex offender under SORA, and those that subject someone to the 1,000 Foot Requirement under SARA are largely the same. *Compare* N.Y. Correct. Law § 168-a *with* N.Y. Exec. Law § 259-c. Thus, it is the same over designation of what crimes constitute "sex" offenses under New York law that subjects Mr. Pennington to the 1,000 Foot Requirement.

48. Mr. Pennington unsurprisingly could not locate housing that satisfied the 1,000 Foot Requirement on his own and he was told by DOCCS personnel that there were no open beds at the shelters available to sex offenders.

9

49. Even if Mr. Pennington's transfer is accepted, he will be forced to comply with these burdensome restrictions, and any additional housing restrictions imposed by the State of Pennsylvania or city of Philadelphia.  See Ex E.

50. Because Mr. Pennington faced the maximum sentence of life in prison, he does not have a mandatory release date.  He will continue to languish in prison indefinitely unless his transfer to Pennsylvania and housing in Pennsylvania is approved, he locates SARA compliant housing in New York City (a near impossibility), or DOCCS provides him with a bed in a sex offender shelter.

**Additional Restrictive Sex Offender Conditions of Parole**

51. Even once Mr. Pennington is released, he will also be subject to numerous debilitating restrictions of parole that are the direct result of his designation as a sex offender.

52. For example, Mr. Pennington will be banned from owning a computer, a cell phone, or accessing the internet or social media in any form without a parole officer's express permission.  See Ex. A.

53. These conditions are unconstitutional. *Packingham v. North Carolina*, 137 S. Ct. 1730, 1733 (2017); *United States v. Eaglin*, 913 F.3d 88, 95 (2d Cir. 2019); *Yunus v. Robinson*, No. 17-CV-5839 (AJN), 2019 WL 168544, at *17 (S.D.N.Y. Jan. 11, 2019).  If allowed to go into effect, however, they will severely limit Mr. Pennington's ability to reenter society.

54. Without access to the internet, a computer, a cell phone, or social media, it will be nearly impossible for him to find work, find housing, pursue educational opportunities, or reconnect with friends and family to help with reintegration.  This is especially concerning in light of the COVID-19 pandemic, as many professional and educational opportunities are now almost exclusively online.

55. Mr. Pennington's conditions of parole also set forth that his parole officer can require him to attend "sex offender counseling/treatment" or to "comply with case specific sex offender conditions" even though he has never committed sexual misconduct. *See* Ex. A.

56. Because Mr. Pennington will be on parole for life as a condition of his release, these debilitating conditions will continue to limit his ability to reenter society forever.

57. Even absent these conditions, Mr. Pennington's sex offender status will force him to submit to burdensome registration and notification requirements for years, and possibly for life, Correct Law §168-h(1)-(2). These requirements, which broadcast his stigmatizing designation, also pose significant obstacles to obtaining housing, employment, and educational opportunities in the future.

58. These conditions and requirements will follow Mr. Pennington if his transfer is approved. Even if Pennsylvania accepts him as a resident, his sex offender status in New York and the attendant conditions will be adopted by Pennsylvania as a matter of course. *See* Ex. E (Pennsylvania will "ensure [Mr. Pennington's parole plan]] meets the conditions set forth by the *sending state* and our own conditions that we would impose on a similarly situated offender")(emphasis added).

**CAUSE OF ACTION**
(Violation of Substantive Due Process:  42 U.S.C. § 1983)

59. Plaintiff restates and incorporates by reference the preceding paragraphs above as if fully set forth herein.

60. A State statutory requirement violates the Due Process Clause of the Fourteenth Amendment if it bears no rational relationship to a legitimate legislative purpose.

61. The legislative purpose of SORA is "to protect the public from sex offenders." *People v. Mingo,* 12 N.Y.3d 563, 574 (2009).

62. The District Attorney prosecuting Mr. Pennington's case has conceded that Mr. Pennington "did not engage in sexual contact with the victim in the course of kidnapping," that Mr. Pennington "had no sexual contact with the victim" and that  Mr. Pennington was "convicted of acts that are not sexual as that term is commonly understood."

63. Registering Mr. Pennington as a sex offender violates his rights to substantive due process, as his registration bears no rational relationship to SORA's legislative purpose of protecting the public from those who have committed sexually-based offenses.

64. By virtue of the forgoing, Defendant is liable for having substantially and proximately caused the foregoing violation of Plaintiff's constitutional rights and his resultant injuries.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests judgment against Defendant as follows:

(a) Mandatory injunctive relief enjoining Defendant to relieve Plaintiff of his sex offender designation and all restrictions and conditions of parole imposed as a result of that designation;

    (b)    Awarding Plaintiff reasonable attorneys' fees, costs, and expenses incurred in prosecuting this action; and

    (c)    Granting Plaintiff such other and further relief as may be just and proper.

Dated: August 31, 2021
       New York, New York

                              EMERY CELLI BRINCKERHOFF
                               ABADY WARD & MAAZEL LLP

                              By:        /s/
                                    Andrew G. Celli, Jr.
                                    David B. Berman
                                    600 Fifth Avenue
                                    New York, New York 10020
                                    (212) 763-5000

                              *Attorneys for Plaintiff Karl Pennington*